MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| McVICKERS McCOOK, LLC, | ) | |
| Plaintiff, | ) | Case No. 09 C 7523 |
| v. | ) | The Honorable William J. Hibbler |
| WAL-MART STORES, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

McVickers McCook, LLC alleges that Wal-Mart Stores reneged on a promise to build a store at a site that McVickers planned to develop. McVickers filed a one count claim for promissory estoppel that Wal-Mart moves to dismiss.

### I. Factual Background

In 2004, McVickers Development identified land in McCook, Illinois that it believed could be developed into a flourishing retail site. It approached Rubloff Development Group to form Rubloff McVickers McCook, LLC, in order to pursue the opportunity.[1] By August 2005, McVickers had negotiated a purchase contract to purchase 34 acres of the 200+ acre development site. At the same time, McVickers began negotiating with the Village of McCook to assist it with the costs associated with the development of the site. In 2005, McVickers asked the Village to impose a

[1] For much of the events involved in this dispute, Rubloff McVickers negotiated with Wal-Mart. In 2007, McVickers Development bought Rubloff Development's interest and Rubloff McVickers McCook, LLC became McVickers McCook, LLC. For simplicity's sake, the Court refers to both Rubloff McVickers McCook and McVickers McCook as "McVickers."

"business district retailers' occupation tax and a business district service occupation tax" (the "BDR" tax) of 1% of the sales of personal property and services at the development site. The Village agreed to the imposition of the tax and entered into a Business District Redevelopment Agreement (the BDR Agreement). Among other things, the BDR Agreement required McVickers to find an anchor retailer for the site. Moreover, the Village would not pay McVickers pursuant to the BDR Agreement until the anchor retailer began its sales.

In mid-2005, McVickers began negotiating with Wal-Mart to lease a portion of the property and serve as the anchor retailer. Wal-mart decided that its interest would be better served purchasing a portion of the 34 acres that McVickers had agreed to purchase. In addition, Wal-Mart desired a portion of the BDR tax to offset its costs. Initially, Wal-Mart requested a $4 million share of the BDR tax. Wal-Mart supplied estimates that it would generate $130 million in sales in its first year of operation and $2.3 billion in sales for the 13-year period that the BDR tax was in effect. About a year later, Wal-mart demanded an additional $2 million share of the BDR tax because of rising construction costs. McVickers agreed to Wal-mart's demands.

McVickers and Wal-Mart negotiated the purchase of the land, and McVickers agreed to purchase 11 acres for $2.3 million and Wal-Mart agreed to purchase 23 acres for $13.95 million. Proceeding to closing was slow, but the parties inched forward. Sometime in 2006, Wal-Mart informed McVickers that it wanted an independent ability to enforce the BDR Agreement. In response to that demand, McVickers negotiated an amendment to the BDR Agreement with the Village. Among other things, the BDR Amendment specified Wal-Mart as the anchor retailer, identified the portion of the BDR tax that Wal-Mart would receive, and that Wal-Mart had the right to enforce its right to receive the BDR tax. Pleased by the BDR Amendment, Wal-Mart's counsel

noted that it was "a thing of beauty."

The parties closed on their respective purchases on October 31, 2006. Just prior to closing, however, Wal-Mart informed the SEC that it had instituted a new capital efficiency model and would reduce capital expenditures for new store projects. Wal-Mart had decided that all new stores would undergo a more rigorous prioritization process and that even stores that had already been approved, might not be built. The proposed McCook store had not gone through the new process. Wal-Mart, however, did not convey any of the change in its plans to McVickers.

In 2007, McVickers entered into agreements with several retailers, including El Pollo Loco, Subway, Radio Shack, Hair Cuttery, Gamestop, U.S. Cellular, and Dunkin Donuts. As noted earlier, McVickers also bought out its partner, Rubloff, in 2007, spending $5 million to receive an assignment of all Rubloff's rights in the property and all rights under agreements related to the development of the property. But in December 2007, Wal-Mart informed McVickers that it would not be building a store on the 23 acres it had purchased.

McVickers alleges that Wal-mart made an unambiguous promise that it would build and operate a Wal-Mart store on the development site, on which McVickers relied to its detriment, which forms the basis of its promissory estoppel claim against Wal-Mart.

II. Standard of Review

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*,

355 U.S. 41, 47 (1957)). Although a complaint need not provide detailed factual allegations, mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir.2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.2007)). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Tricontinental Indus., Ltd. v. Price WaterhouseCoopers*, 475 F.3d 824, 833 (7th Cir. 2007).

Wal-Mart relies heavily on a Site Development Agreement (SDA) that it entered into in October 2006 with McVickers. Ordinarily, a court may consider only the plaintiff's pleading in evaluating a 12(b)(6) motion to dismiss. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Federal Rule of Civil Procedure 10(c), however, provides that copies of written instruments attached as an exhibit to a pleading becomes a part of that pleading for all purposes. Fed. R. Civ. P. 10(c). Rule 10(c) applies to documents attached to a motion to dismiss that are referred to in a plaintiff's complaint and central to the plaintiff's claim. *Rosenblum*, 299 F.3d at 661. This exception is aimed at cases interpreting contracts and prevents a party from surviving a motion to dismiss by artful pleading or failing to attach relevant documents. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

McVickers suggests that it never refers to the SDA and further that the SDA is not central

to its claim because it pursues a promissory estoppel claim and the SDA governs an entirely different matter. But the purpose of the exception is to prevent parties from such artful pleading, enabling a court to independently examine a document and form its own conclusions about its effect rather than accept the pleader's allegations concerning that effect. *Rosenblum*, 299 F.3d at 657.

In *Rosenblum*, for example, the plaintiff agreed to sell his interest in a company that he owned to the defendant. *Id.* at 659. The agreement to sell plaintiff's company was memorialized in an acquisition agreement. *Id.* at 659-60. As part of the sale, the plaintiff would then go to work for the defendant and so the parties also executed an employment agreement. *Id.* at 660. When the defendant failed to pay the full purchase price as negotiated in the acquisition agreement, the plaintiff sued for breach of contract. *Id.* The plaintiff, however, attached only the acquisition agreement and not the employment agreement, and in fact never referred explicitly to the employment agreement in his complaint. *Id.* at 661. Nonetheless, the Seventh Circuit held that the agreement fell within the exception to the general rule governing matters outside of the pleadings. *Id.* It noted that from defendant's point of view:

> the contract under review is the combination of the Acquisition Agreement and the Employment Agreement . . .[and the defendant] is entitled to take the position that [plaintiff] has appended only a part of the relevant instrument and to append what it contends is the remainder. It would have been impossible for the district court or for this court to evaluate the disagreement between the parties without having all of the documentation.

*Id.* at 661-62.

The same reasoning applies here. McVickers has artfully avoided any explicit reference to the SDA and instead referred only generally to promises between the parties. McVickers does not dispute the authenticity of the SDA or that it comprises part of the agreement between the parties. Instead, McVickers argues that the SDA does not encompass the parties' dispute. But the effect of

the SDA is a question the Court may answer from an independent examination of the documents involved. McVickers alleges that the parties had an agreement — and rather than reference the entirety of that agreement in its Complaint, McVickers references only the parts of that agreement that support its position. Like the employment agreement in *Rosenblum*, the SDA is crucial to understanding the parties' relationship and agreement. *Rosenblum*, 299 F.3d at 661; *see also Rowland v. Haven Properties, LLC*, No. 05 C 1957, 2005 WL 2989901, at *3 (N.D. Ill. Nov. 7, 2005) (allowing defendant to rely on trust agreement because it was crucial to understanding the relationship among the parties); *Fields v. Wilber Law Firm, P.C.*, No. 03-1079, 2003 WL 23094867, at * 3(C.D. Ill. Jul. 22, 2003) (allowing defendant to rely on contract where plaintiff had strategically omitted reference to contract); *DeJohn v. The .tv Corp. Int'l*, 245 F. Supp. 2d 913, 916 n.2 (N.D. Ill. 2003) (allowing defendant to rely on contract because plaintiff had implicitly referenced it in the complaint). The Court concludes that as part of the agreement between the parties, the SDA is a document that is central to McVickers's claim and is referred to in its Complaint, and therefore the Court may properly consider the SDA in ruling on Wal-Mart's motion.

## III. Analysis

Promissory estoppel is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance of another's promise or conduct. *Kullins v. Malco, a Microdot Co., Inc.*, 121 Ill. App. 3d 520, 527, 459 N.E.2d. 1038 (Ill. App. Ct. 1984). To state a claim for promissory estoppel under Illinois Law, a plaintiff must plead: 1) an unambiguous promise made by the defendant; 2) reasonable reliance on that promise; and 3) detrimental reliance on that promise. *Chicago Limousine Serv., Inc. v. City of Chicago*, 335 Ill. App. 3d 489, 499, 781 N.E.2d 421 (Ill. App. Ct. 2002).

Wal-Mart first argues that McVickers has not alleged a clear and unambiguous promise. This argument merits little discussion. The very first paragraph of McVickers's Complaint alleges that Wal-Mart made a promise to "create a sales tax revenue stream by constructing and operating a Wal-Mart Supercenter as part of a shopping center development in McCook, Illinois." (Compl. ¶ 1). McVickers then goes on to detail the lengthy negotiations between Wal-Mart and itself, which included modifications to the agreement McVickers had with the Village of McCook, the negotiations the parties had with the land owner and the closing process on that real-estate. Wal-Mart suggests that McVickers has not pleaded a definite promise because McVickers has not pleaded the details about the promise such as who made it, when it was made, or how it was communicated. Rule 8 of the Federal Rules, however, does not require such detail in pleading. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). McVickers's Complaint is not so threadbare to fall below the threshold contemplated by *Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007), *Erickson v. Pardus*, 551 U.S. 89 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1939 (2009).

Wal-Mart next suggests that the SDA makes McVickers's reliance on any promise unreasonable. McVickers argues that the SDA does not make its reliance on Wal-Mart's alleged promises unreasonable because the SDA concerns the manner in which a Wal-Mart store (and other businesses) would be built on the tracts of land purchased by Wal-Mart and McVickers and not any promise to build a Wal-Mart store in the first instance. In support of its argument, Wal-Mart points to three separate provisions within the SDA.

First, Wal-Mart points to the opening Recitals of the SDA that set forth the nature of the parties' relationship. Recital C describes the intention of the parties to develop the McCook site into a "unified shopping center." (Def. Mot. Ex. A). The Recital contains an important proviso. It notes

that "nothing in this Agreement shall constitute an express or implied obligation on the part of either Owner to make any improvements to their respective Tracts, except as expressly provided in this agreement." Wal-Mart goes on to suggest that "[t]he improvements provided for in the [SDA] do not include the construction of a store," and therefore McVickers's reliance on any promise to build a store was unreasonable.

Wal-Mart's description of the SDA is not convincing. The SDA contains numerous references to the construction of a store. For example, each and every page of the agreement contains the identification of the store number that was to be built on the McCook site (Store No. 4382-00). Section 1(A)(2) of the SDA directs Wal-Mart to construct the improvements identified in Exhibit B to the SDA, which include a Wal-Mart Store with 203,710 square feet of conditioned space and 1,028 parking spaces. Section 1(B)(1) states that Wal-Mart has contracted and received engineering plans known as "Wal-Mart McCook Store No. 4382-00 - Final Engineer" for the proposed store and that McVickers has approved those plans. Contrary to Wal-Mart's argument, the SDA clearly contemplates the construction of a store, and the proviso in Recital C does not necessarily make any reliance upon a promise to build a Wal-Mart store unreasonable.

Second, Wal-Mart points to a No-Minimum-Business and Reliance clause. That clause states that Wal-Mart has no obligation to provide "any minimum amount of business to [McVickers] . . . [and that if McVickers] make[s] any expenditures, investments, or commitments in reliance on any present or future business from Wal-Mart," it does so at its own risk. Wal-Mart implies that this promise is inconsistent with any promise to construct and operate a store at the McCook site and therefore McVickers's claim fails as a matter of law. The Court disagrees. A factfinder could reasonably conclude that the No-Minimum-Business and Reliance clause speaks not to a promise

(or lack thereof) to construct a store in the first instance, but rather to a promise (or lack thereof) that the store will generate a minimal amount of revenue. In other words, a factfinder could reasonably construe the clause as protecting Wal-Mart from a promise, for example, that the store would generate $130 million in revenue its first year of operation.

Finally, Wal-Mart points to an integration clause. The clause states that the SDA "supersedes any prior agreements between the parties concerning the Tracts." It also states that "no oral statements, representations, or prior written matter relating to the subject matter hereof, but not contained in this Agreement, shall have any force or effect." Wal-Mart argues that he integration clause makes any reliance on promises made by Wal-Mart during the parties' negotiations unreasonable. On the other hand, McVickers insists that the integration clause does not bar its promissory estoppel claim because the SDA concerns the manner in which the tracts should be developed, and not the promise to develop them in the first instance. In support, McVickers points to Wal-Mart's demands for a portion of the BDR Tax, its request to amend the BDR Agreement, and its counsel's joyful response to that amendment as evidence that Wal-Mart did promise to build a store on the site and that McVickers's reliance on that promise was reasonable.

In short, the parties dispute the meaning of the contract. Wal-Mart suggests that the SDA's integration clause makes clear the parties' intent that the SDA provide the source for the parties' entire agreement; McVickers suggests that the integration clause is limited to the subject matter of the SDA. Under Illinois law, courts give clear and unambiguous contract terms their plain meaning. *Srivastava v. Russell's Barbeque, Inc.*, 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33 (1988). If the language of a contract is unambiguous, courts must interpret the parties' intentions from that language. *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*, 256 Ill. App. 3d 31, 34, 628 N.E.2d

1165, 1168 (1993).

The language of the SDA's integration clause is not ambiguous. It states that the SDA supersedes any prior agreements "concerning the Tracts." A promise to build a Wal-Mart store on the tract of land purchased by Wal-Mart clearly concerns the tracts, and thus is encompassed by the integration clause. McVickers fails to point to anything in the integration clause to suggest that the parties intended the SDA to be limited solely to the manner in which the parties should improve the tracts and not whether they should be improved in the first instance. Indeed, Recital C states plainly that "Developer [McVickers] and Wal-Mart intend to develop the Total tract into a unified shopping center in accordance with the Site Plan . . . ." Instead, McVickers asks the Court to search for the parties' intent in the language of the amendment to the BDR Agreement and even in Wal-Mart's response to that. That might be appropriate if the language of the SDA, and in particular the integration clause, were ambiguous, but McVickers makes no real argument that the SDA's integration clause is ambiguous. The Court cannot disregard the plain language of the integration clause and finds that the parties intended the SDA to encompass the entirety of their agreement concerning the tracts, including any development of those tracts.

Despite the clarity of the integration clause, McVickers insists that, at best, there exists a question of fact as to whether it was reasonable for it to rely on Wal-Mart's conduct related to the negotiation of the BDR Amendment and its pre-closing conduct. Again, however, McVickers points to oral promises made prior to the date the parties entered into the SDA. The integration clause of the SDA , however, unambiguously states that oral statements and representations related to the tracts that are not contained in the SDA "shall [not] have any force or effect." Given this language, McVickers's reliance on any prior oral promises was not reasonable.

This result is consistent with the history of the doctrine of promissory estoppel. Promissory estoppel is applicable "under certain narrow circumstances to serve 'as a substitute for consideration.'" *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cri. 2005). If there is no issue concerning consideration, then there is no remedial gap for promissory estoppel to fill. *Id.* In other words, promissory estoppel is not meant to be a substitute for a breach of contract claim. A party that finds itself unhappy with the terms of the contract it negotiated cannot avoid those terms simply by artfully pleading a promissory estoppel claim instead. McVickers may very well have a claim against Wal-Mart for breach of contract if Wal-Mart breached the terms of the SDA, but therein lies McVickers's remedy. The Court GRANTS Wal-Mart's Motion to Dismiss.

IT IS SO ORDERED.

8/12/10
Dated

Wm. J. Hibbler
Hon. William J. Hibbler
United States District Court